Curia, per

Butler, J.
The jury, under the charge of the Judge, who regarded the case as one of fact in the application of the principles of law as laid down by him, and which seem to be unquestionable, have found a verdict for the defendants, by which they have given them the benefit to the extent of payments made by Campbell Douglas on his stock, and have allowed the bank credit for twenty dollars and interest on each share, which it seems to have been concluded that it was under a legal obligation to advance for its creditor; the effect of which was to fix upon the bank a liability to advance for its creditor a larger sum of money, by way of protecting from forfeiture the security held by it, than it had previously loaned to him. In other words, it is requiring the bank to buy a security to save its debt; and this, too, to be done without any risk at all on the part of the borrower. If the bank incurred an obligation by express contract, that, doubtless, ought to govern the case. But without such express understanding, we are of opinion, that the bank was not bound by law to protect from forfeiture the stock deposited with them as a security for a debt, by the payment of the instalments in arrear. *339 Its duty and interest are very distinguishable. The former results from the implications of law, arising out of the bailment; the latter depends altogether on the judgment of those who have the management of the institution.
The pawnor, at the time he deposited his stock, had a qualified interest in it, to be made absolute and indefeasible only by paying up, at the time required, the last instalment. Before that was done, the stock was a perfectable pawn. The right and power of the pawnor to prevent the forfeiture were unquestionable. There was nothing in the contract with the pawnee to prevent his doing so. How far his interest may.have coincided with his rights at the time, was uncertain. It was not certain that the entire stock was worth the risk of paying the last instalment. If he was not able to pay it up, according to the resolution of the company, it may have been his misfortune ; and if he refused to do it, it was the result of his judgment. When he subscribed for the stock, he undertook for himself all the risks of events, and the requirements of the charter. Forfeiture, on certain contingencies, was one of the risks. Suppose the stock to have been pledged to another person or institution, instead of this bank, then how would the pawnor and pawnee have stood, in relation to it 7 “If the pledger has only a limited title to the thing, as for life, or for years, he may still pawn it to the extent of his title; but when that expires, the pledgee must surrender it to the person who succeeds to the ownership.” Story, 201. When, therefore, as in this case, the stock became forfeited, who would succeed to the ownership 7 Why, certainly, the party or power that could claim the forfeiture. And can it make any difference that it happened to be the party occupying, in part, the position of pledgee 7 I apprehend not. Why suppose, in such case, that it was the pledgee’s duty to protect the pawnor from forfeiture'? Surely not on the ground that the pledger had not the power, or that it was not competent for him to do so.
By the finding of the jury, the pledgee has been required to perform acts for the benefit of the pledger, which the latter might have performed himself; and that too without consideration and without the prospect of legal remuneration. For suppose this case — that the bank had paid at *340 the time of forfeiture, the instalment in arrear, and the stock had ultimately become worthless. In such case could the bank have maintained an action of indebitatus assumpsit against the defendant, Douglas, for money laid out and expended for his use"? In such an action, and under such circumstances, he could have availed himself of a very different position from the one which he now claims, when it has become his interest to claim the benefit of the rise in stocks. There are instances where persons must decide prospectively, and not be permitted to stand still and take advantage of the retrospect, and the more sagacious or fortunate judgment of others.
Suppose another case — ‘that instead of the last instalment being $20, it had been $80, would the bank then have been required to advance so much money for its creditor, because it had a demand against him, and that demand smaller in amount than the sum loaned 4 The principle of liability must be one and the same in both instances, and if such should be held to be the duty of the bank, growing out of the legal relations of the parties, this will be the result here; the bank would be made the underwriter of the creditor, to run all the risks and to pay the premiums in the bargain. We think the jury has fixed on the bank liabilities which were not imposed upon it by the law.
It is said, however, that Douglas offered to avoid the forfeiture of his stock, by proposing to the bank to let a friend take it and pay up the instalments in arrear. I do not understand that it was his design to let the bank have the security thus increased by his friend; but the bank was required to give up all claim in, or control over, the scrip. It was nothing more than requiring the bank to give its security away without consideration or benefit to itself.
It seems the president and cashier did offer to lend the defendant the amount of the unpaid instalment, by his giving a stock note, but which he refused to do, preferring, I suppose, to run no more risks, and to incur no further liabilities, on account of his forfeitable pledge. This would go to shew that he was disposed to abandon it to its fate. It was certainly any thing but an authority for the bank to do any thing for him, especially in relation to the power, *341 and it goes very far to shew that he was disposed to negative the duty of the bank to sell at the time. His omission to give further instructions to sell, would indicate that he was wholly indifferent on the subject, or that he was willing matters should go on according to their natural and legal tendency. If the blank indorsements on the scrip gave the bank the right to transfer it, and thereby effect a sale, it was a naked power, which might have been directed, if not entirely controlled, by the pledger; and if he had expressed his wish then, that the stock should be sold, before forfeiture, and it had not been done, he might have had more cause to complain. But giving the defendant the full benefit of this ground of appeal, what should be the consequences'? Why, in no point of view, could he be allowed more than the stock might have brought on an actual sale, either at the time of forfeiture, or when the note fell due, for then he might be entitled to any thing in the way of discount, that would have gone to extinguish it. If it should be understood on another trial, from the facts of the case, that the bank was under a legal obligation to sell, then the defendant would be entitled to all the advantages and benefits that might have resulted from such sale.
We think the verdict, as it stands, is founded on erroneous principles, and, therefore, set it aside.
The motion for a new trial is granted.
O’Neall, Evans, Wardlaw and Frost, JJ. concurred.